IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Julien Garcon, )<br>)<br>      Petitioner, )<br>)<br>  vs. )<br>)<br>Warden Cruz, *FCI Williamsburg*, )<br>)<br>      Respondent. )<br>                ) | Civil Action No. 6:13-2450-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

    This matter is before the court on the respondent's motion to dismiss or, in the alternative, for summary judgment (doc. 13). The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

    The respondent filed a motion to dismiss or, in the alternative, for summary judgment on November 6, 2013. On November 7, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the motion to dismiss and motion for summary judgment procedures and the possible consequences if he failed to adequately respond to the motion. On December 2, 2013, the petitioner filed a response in opposition to the motion.

## **FACTS PRESENTED**

    The petitioner has been incarcerated at the Federal Correctional Institution ("FCI") Williamsburg located in Salters, South Carolina, since August 27, 2008. While at FCI Williamsburg he was released on a federal writ to the Miami Federal Detention Center

("FDC Miami") from September 6, 2011, to April 30, 2012, and subsequently returned to FCI Williamsburg. He is serving a 120-month sentence imposed by the United States District Court for the Southern District of Florida for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (doc. 13-2, sentence monitoring comp. data). The petitioner's projected release date is January 9, 2016, with credit for good conduct time (*id*. p. 1). The disciplinary action underlying this petition occurred at FDC Miami. The petitioner seeks to have the court expunge his disciplinary charge for Insolence Toward a Staff Member in violation of Code 312 (doc. 1, pet. p. 7). He also seeks to have 13 days of good conduct time restored (*id.*).

The underlying facts of the petitioner's disciplinary charge are as follows: On March 21, 2012, at approximately 4:45 p.m., FDC Miami Special Investigative Services ("SIS") Technician J.T. Reid arrived at G-East Housing Unit to pick up the petitioner for a urine test in accordance with the Random Inmate Selection Report for March. While at the unit door waiting on the petitioner, SIS Technician Reid heard someone (allegedly the petitioner) loudly state in the presence of several inmates, "Man what's up with this motherfucker! He be piss testing me every month. That motherfucker must be gay or something!" SIS Technician Reid asked the petitioner, "What was his problem?" The petitioner replied, "Why you be testing me every month?" SIS Technician Reid informed the petitioner that he was on the random list and that if his name appeared on the list every month he would be tested. The petitioner replied, "Can't nobody else do the test?" SIS Technician Reid informed the petitioner that he could submit to being tested or refuse. After asking the petitioner several times if he was going to do the urine test, the petitioner stated, "I'm putting this on paper!" At that time, SIS Technician Reid ordered the petitioner back into the housing unit for refusing to take the urine test and then departed G-East Housing Unit with the other inmates for testing *(*doc. 13-3, incident rep. § 11; doc. 13-4, Doe decl. ¶ 8)*.* Later that same day, SIS Technician Reid prepared an incident report charging

the petitioner with Refusing to Provide Urine Sample and Insolence Toward a Staff Member in violation of Codes 110 and 312, respectively (doc. 13-3, incident rep. § 11; doc. 13-4, Doe decl. ¶ 8).

At approximately 8:11 p.m. on March 21, 2012, the petitioner received the incident report charging him with violating Codes 110 and 312. The incident report provided the petitioner with a description of the incident and the prohibited acts with which he was being charged. An investigation was conducted, and the matter was referred to the Unit Discipline Committee ("UDC"). The UDC hearing was conducted on March 26, 2012. At the hearing, the petitioner stated he did not refuse to urinate. Because of the serious nature of the charges, the UDC referred the matter to the Discipline Hearing Officer ("DHO"). The UDC recommended that if the petitioner was found guilty, the sanction be 30 days of disciplinary confinement, 27 days disallowance of good conduct time, and 90 days loss of commissary (doc. 13-4, Doe decl. ¶ 9; doc. 13-3, incident rep. §§ 14-21).

On March 27, 2012, the petitioner was given written notice of a hearing before the DHO and advised of his rights at the DHO hearing. At that time, the petitioner indicated that he did not want a staff representative, but he did want one inmate witness, Sean Gabbison (doc. 13-4, Doe decl. ¶ 10; doc. 13-5, notice of hearing before DHO; doc. 13-6, inmate rights at hearing).

On April 4, 2012, DHO Ree Doe conducted a disciplinary hearing via video conferencing. The petitioner was present and again advised of his rights. When the DHO asked the petitioner about the charge, he stated he never refused to urinate. The petitioner called one inmate witness, Sean Gabbison, who testified that the petitioner did not say anything to the officer or he could not hear the petitioner. The petitioner waived having a staff representative (doc. 13-4, Doe decl. ¶ 11; doc. 13-7, DHO report).

The DHO found that the petitioner committed the prohibited acts as charged. The DHO imposed sanctions for Code 110, Refusing to Provide Urine Sample, as follows:

3

60 days disciplinary segregation, disallowance of 40 days good conduct time, loss of visits for one year, and loss of visitors for one year.  The sanctions for Code 312, Insolence Toward a Staff Member, were as follows: 30 days disciplinary segregation, disallowance of 13 days good conduct time, and six months of loss of phone, suspended pending 180 days (doc. 13-7, DHO report).  The DHO prepared a written report on May 14, 2012, detailing his decision, the evidence he relied upon, and the reasons for the sanctions he imposed.  A copy of this written decision was delivered to the petitioner on July 19, 2012 (doc. 13-4, Doe decl. ¶ 12; doc. 13-7, DHO report*).*  The petitioner was released from disciplinary segregation on June 5, 2012 (doc. 13-4, Doe decl. ¶ 18).

The petitioner appealed this decision through the administrative remedy process to the Regional Office, where it was remanded back to the institution for a rehearing on September 17, 2012 (doc. 13-4, Doe decl. ¶ 13; doc. 13-8, regional admin. remedy appeal; doc. 13-9, resp. to regional admin. remedy appeal).

The petitioner was placed in administrative detention on September 17, 2012, "pending investigation of a violation of Bureau regulations" (doc. 1-1 at p. 8, admin. det. order).  The petitioners states that he was not told the reason why he was placed in administrative detention, and he was not provided with a notice of the rehearing (doc. 16-1, pet. decl.).  Hearings are held in the Special Housing Unit ("SHU") at FCI Williamsburg, and the DHO states in his declaration that the petitioner was placed in administrative detention on September 17, 2012, not as a means of retaliation but so the rehearing could be conducted (doc. 13-4, Doe decl. ¶¶ 17-18).

On September 20, 2012, the DHO conducted a rehearing via videoconferencing.[1]  According to the declaration of the DHO, Ree Doe, the petitioner was again advised of his rights, he was told why the incident report was remanded for a

---

[1] The DHO was at FCI Estill, and the petitioner was at FCI Williamsburg (doc. 13-4, Doe decl. ¶ 14).

4

rehearing, he indicated he was ready to proceed with the rehearing, and he denied the charges. According to the DHO, at the rehearing, the petitioner elected not to call a witness or have a staff representative, although the witness testimony from the original DHO hearing was considered. The DHO states in his declaration that the petitioner did not ask if he could call a new witness or present a statement from another inmate (doc. 13-4, Doe decl. ¶ 14; doc. 13-10, DHO report).

The petitioner states in his declaration that he was not advised of his right to have staff representation, to present additional witnesses, or to present evidence during the rehearing. He further states that if he had been so advised he would have requested inmate Nicholas Thomas as a witness (doc. 16-1, pet. decl.). The petitioner has submitted to the court the declaration of inmate Thomas, who states in his declaration that, on the date of the incident in question, he made the following statements that were attributed to the petitioner: "That motherfucker be piss testing me to every month," and "he [SIS Technician Reid] must be gay or something" (doc. 16-1, Thomas decl.).

The DHO again found that the petitioner committed the prohibited act of Insolence Toward a Staff Member, but he expunged the charge for Refusing to Provide a Urine Sample. The DHO imposed the following sanctions: 30 days of disciplinary segregation, disallowance of 13 days of good conduct time, and six months of loss of phone suspended pending 180 days. The DHO prepared a written report on December 15, 2012, detailing his decision, the evidence he relied upon, and the reasons for the sanctions he imposed. A copy of this written decision was delivered to the petitioner on December 19, 2012 (doc. 13-4, Doe decl. ¶ 15; doc. 13-10, DHO report).

According to the DHO, because the petitioner had already served his time in disciplinary segregation on the charge of Insolence Toward a Staff Member after the first DHO hearing, he was released from segregation a few days after the rehearing (doc. 13-4, Doe decl. ¶ 18).

The petitioner appealed this decision through the administrative remedy process, where the disciplinary action and sanctions were upheld by the Regional Office (doc. 1-1, admin. remedy appeal docs. at pp. 5-7, 13). The petitioner's appeal is still pending with the Central Office, but the time period for a response from the Central Office has passed. Thus, according to policy, the petitioner "may consider the absence of a response to be a denial at that level" (doc. 13-4, Doe decl. ¶16; doc. 13-11, Program Statement No. 1330.17).

## APPLICABLE LAW AND ANALYSIS

As matters outside the pleadings have been presented to and not excluded by the court, the respondent's motion will be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The petitioner alleges the following due process violations with regard to the rehearing:  denial of witnesses, denial of the opportunity to present documentary evidence, denial of access to exculpatory evidence, denial of proper investigation, and inadequate notice of remand for rehearing of the charge   He seeks to have the disciplinary action expunged from his records and restoration of 13 days of good conduct time.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Constitutional Amendment XIV § 1. Certain procedural safeguards apply when loss of statutory good time credit is at issue. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). These due process protections include advance written notice of the charges, a hearing before an impartial decision maker, the opportunity to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex, and a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. *Id*. at 563–71. Moreover, "revocation of good time does not comport with 'the minimum requirements of procedural due process,' . . . unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is a lenient one,

requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id.* at 455-56.

According to the DHO, at the rehearing, the petitioner was again advised of his rights and the reason for the remand, and the petitioner stated that he was ready to proceed with the rehearing. The DHO further states that the petitioner elected not to call a witness or have a staff representative, and the testimony of the petitioner's witness in the initial hearing was considered (doc. 13-4, Doe decl. ¶ 14). However, the petitioner has demonstrated that specific issues of material fact exist as to whether the due process safeguards recognized in *Wolff* were observed with regard to the rehearing. Specifically, the petitioner states in his declaration that he was not advised of his right to have staff representation and to present witnesses and evidence at the rehearing.[2] The petitioner further states that if he had been so advised, he would have requested a staff representative, and he would have requested witness Nicholas Thomas, an inmate who would have testified that he made the statements attributed to the petitioner in the Insolence Toward a Staff Member charge (*see* doc. 16-1, pet. decl. & Thomas decl.). Thus, the petitioner has presented evidence that he was harmed by the DHO's alleged failure to give him the opportunity to present witnesses and evidence at the rehearing. *See Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir.2004) (stating that even if a prison official's actions create a potential due process violation, a habeas petitioner must demonstrate that he was harmed by the violation in order to obtain relief). Based upon the foregoing, the undersigned recommends that summary judgment be denied as issues of material fact

---

[2]The petitioner also states that he did not receive notice that the matter had been remanded for a rehearing, and he did not know about the rehearing until the day of the rehearing (doc. 16-1, pet. decl.). However, it is clear that the petitioner was given written notice of the *charges* more than 24 hours before the DHO rehearing as he received a copy of the incident report on March 21, 2012, prior to the first hearing. *See Ageloff v. Reese*, C.A. No. 5:07-cv-124-DCB-MTP, 2009 WL 2591622, at *4 (S.D. Miss. Aug. 13, 2009) (finding that, under *Wolff,* "advance notice of the *charges*, not of the hearing (or rehearing)" is required) (emphasis in original).

remain with regard to whether the petitioner received the due process protections set forth in *Wolff* at his rehearing.[3]

The petitioner next contends that the Insolence Toward a Staff Member charge should be dismissed as "fruit of the poisonous tree" because the incident started when he allegedly refused to submit to a urine test, which the petitioner contends was a false report and which charge was dismissed after the rehearing (doc. 1, pet. pp.5-6). "The fruit of the poisonous tree doctrine excludes evidence obtained from or as a consequence of lawless official acts." *Costello v. United States*, 365d U.S. 265, 280 (1961). However, this doctrine only "applies to evidence that is obtained during a criminal investigation [and] has no applicability to prison disciplinary hearings." *Dillhunt v. Theriault*, No. 9:07-CV-0412, 2009 WL 4985477, at *15 (N.D.N.Y. Dec. 15, 2009) (citing *Rabb v. McMaher*, No. 94-CV-614, 1998 WL 214425, at *7 (N.D.N.Y. Apr. 24, 1998)). Accordingly, summary judgment should be granted to the respondent on this claim.

The petitioner also contends that he was placed in confinement twice for the same charge, which constituted double jeopardy (doc. 1, pet. p. 6). The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . .be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. Amend. V. The Fifth Amendment, however, applies only to criminal proceedings. Prison disciplinary proceedings are civil in nature and do not implicate the Fifth Amendment. *See United*

---

[3]The petitioner also alleges that he was denied due process because the BOP failed to follow its Program Statement No. 5270.09, section 541.5 by failing to appoint another Investigating Officer prior to the rehearing to review the video/audio of the incident in question (doc. 1, pet. p. 6). The petitioner alleges the failure of the BOP to do so violated his due process rights (*id.*). However, "the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met." *Edmonds v. Ziegler*, C.A. No. 5:10-cv-1374, 2014 WL 321050, at *3 (S.D.W.Va. Jan. 29, 2014). Upon remand, the petitioner was charged with the same two code violations. Because the same incident report was being reheard, there does not appear to have been any requirement under Program Statement No. 5270.09 for the BOP to appoint another Investigating Officer or hold another UDC hearing. *See* www.bop.gov/policy/progstat/5270_009.pdf

*States v. Devaughn*, 32 F. App'x 60, 61 (4th Cir. 2002) ("prison disciplinary sanctions do not preclude subsequent criminal prosecution for the same conduct under the Double Jeopardy Clause of the Fifth Amendment because Congress intended disciplinary proceedings to be civil in nature"); *Stroman v. Byars*, No. 1:13-805-JFA-SVH, 2013 WL 4524167, at *5 (D.S.C. Aug. 26, 2013) ("double jeopardy claim is not cognizable because prison disciplinary proceedings are not part of a criminal prosecution"). Accordingly, summary judgment should be granted to the respondent on this claim.

Lastly, the petitioner claims he was retaliated against for exercising his right to appeal the DHO decision by being placed twice in the SHU for the same incident (doc. 1, pet. p. 6). Liberty interests protected by the Due Process Clause are generally limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Fourth Circuit has consistently found that administrative segregation is simply not an atypical or significant hardship in relation to the ordinary incidents of prison life. *See, e.g., Beverati v. Smith*, 120 F.3d 500, 503–04 (4th Cir.1997) (holding confinement in administrative segregation does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force, and inmates did not possess a liberty interest in avoiding administrative segregation). As the Supreme Court has stated:

> Generally, the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the term of confinement ordinarily contemplated by a prison sentence, and therefore, administrative segregation is the sort of confinement...inmates should reasonably anticipate receiving at some point in their incarceration and does not invoke an interest independently protected by the Due Process Clause.

*Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

At FCI Williamsburg, DHO hearings are held in the SHU (doc. 13-4, Doe decl. ¶ 17). The petitioner served his time in disciplinary segregation after the DHO found at the initial hearing that he committed both prohibited acts (doc. 13-1, inmate history; doc. 13-7, DHO report). After the petitioner appealed the DHO's findings, the Regional Director remanded the matter back for a rehearing, and the petitioner was placed back in administrative detention on September 17, 2012 (doc. 13-1, inmate history). However, the evidence before the court shows that this was not a means of retaliation against the petitioner but was done so that the rehearing could be conducted in the SHU on September 20, 2012 (doc. 13-4, Doe decl. ¶ 18). At the rehearing, the petitioner was only found to have committed the prohibited act of Insolence Toward a Staff Member. He received 30 days disciplinary segregation, which he already had served after the first DHO hearing, and thus he was released from the SHU shortly thereafter (doc. 13-1, inmate history, doc. 13-4, Doe decl. ¶ 18). The petitioner has not shown that his confinement in the SHU created an atypical or significant hardship in relation to the ordinary incidents of prison life, and therefore such confinement does not constitute a violation of his due process rights. Accordingly, summary judgment should be granted on this claim.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the respondent's motion for summary judgment (doc. 13) be granted in part and denied in part as set forth above.

s/ Kevin F. McDonald
United States Magistrate Judge

March 19, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).