IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Julien Garcon,            )<br>                           )<br>            Petitioner,     )<br>                           )<br>     vs.                   )<br>                           )<br>Warden Cruz, *FCI Williamsburg*,  )<br>                           )<br>            Respondent.    )<br>_____) | Civil Action No. 6:13-2450-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the respondent's motion for summary judgment (doc. 33). The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

The respondent filed the motion for summary judgment now before the court on May 27, 2014. On May 29, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the motion for summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. On June 30, 2014, the petitioner filed a response in opposition to the motion.

**FACTS PRESENTED**

The petitioner has been incarcerated at the Federal Correctional Institution ("FCI") Williamsburg located in Salters, South Carolina, since August 27, 2008. While at FCI Williamsburg he was released on a federal writ to the Miami Federal Detention Center ("FDC Miami") from September 6, 2011, to April 30, 2012, and subsequently returned to FCI

Williamsburg. He is serving a 120-month sentence imposed by the United States District Court for the Southern District of Florida for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (doc. 13-2, sentence monitoring comp. data). The petitioner's projected release date is January 9, 2016, with credit for good conduct time (*id*. p. 1). The disciplinary action underlying this petition occurred at FDC Miami. The petitioner seeks to have the court expunge his disciplinary charge for Insolence Toward a Staff Member in violation of Code 312 (doc. 1, pet. p. 7). He also seeks to have 13 days of good conduct time restored (*id.*).

The underlying facts of the petitioner's disciplinary charge are as follows: On March 21, 2012, at approximately 4:45 p.m., FDC Miami Special Investigative Services ("SIS") Technician J.T. Reid arrived at G-East Housing Unit to pick up the petitioner for a urine test in accordance with the Random Inmate Selection Report for March. While at the unit door waiting on the petitioner, SIS Technician Reid heard someone (allegedly the petitioner) loudly state in the presence of several inmates, "Man what's up with this motherfucker! He be piss testing me every month. That motherfucker must be gay or something!" SIS Technician Reid asked the petitioner, "What was his problem?" The petitioner replied, "Why you be testing me every month?" SIS Technician Reid informed the petitioner that he was on the random list and that if his name appeared on the list every month he would be tested. The petitioner replied, "Can't nobody else do the test?" SIS Technician Reid informed the petitioner that he could submit to being tested or refuse. After asking the petitioner several times if he was going to do the urine test, the petitioner stated, "I'm putting this on paper!" At that time, SIS Technician Reid ordered the petitioner back into the housing unit for refusing to take the urine test and then departed G-East Housing Unit with the other inmates for testing. Later that same day, SIS Technician Reid prepared an incident report charging the petitioner with Refusing to Provide Urine Sample

and Insolence Toward a Staff Member in violation of Codes 110 and 312, respectively (doc. 32-1, Slater decl. ¶ 8).

At approximately 8:11 p.m. on March 21, 2012, the petitioner received the incident report charging him with violating Codes 110 and 312. The incident report provided the petitioner with a description of the incident and the prohibited acts with which he was being charged. An investigation was conducted, and the matter was referred to the Unit Discipline Committee ("UDC"). The UDC hearing was conducted on March 26, 2012. At the hearing, the petitioner stated he did not refuse to urinate. Because of the serious nature of the charges, the UDC referred the matter to the Discipline Hearing Officer ("DHO") (doc. 32-1, Slater decl. ¶ 9).

On March 27, 2012, the petitioner was given written notice of a hearing before the DHO and advised of his rights at the DHO hearing. At that time, the petitioner indicated that he did not want a staff representative, but he did want one inmate witness, Sean Gabbison (doc. 13-4, Ree Doe decl. ¶ 10; doc. 13-5, notice of hearing before DHO; doc. 13-6, inmate rights at hearing). On April 4, 2012, DHO Ree Doe conducted a disciplinary hearing via video conferencing. The petitioner was present and again advised of his rights. When the DHO asked the petitioner about the charge, he stated he never refused to urinate. The petitioner called one inmate witness, Sean Gabbison, who testified that the petitioner did not say anything to the officer or he could not hear the petitioner. The petitioner waived having a staff representative (doc. 13-4, Doe decl. ¶ 11; doc. 13-7, DHO report).

The DHO found that the petitioner committed the prohibited acts as charged. The DHO imposed sanctions for Code 110, Refusing to Provide Urine Sample, as follows: 60 days disciplinary segregation, disallowance of 40 days good conduct time, loss of visits for one year, and loss of visitors for one year. The sanctions for Code 312, Insolence Toward a Staff Member, were as follows: 30 days disciplinary segregation, disallowance of

13 days good conduct time, and six months of loss of phone, suspended pending 180 days (doc. 13-7, DHO report). The DHO prepared a written report on May 14, 2012, detailing his decision, the evidence he relied upon, and the reasons for the sanctions imposed. A copy of this written decision was delivered to the petitioner on July 19, 2012 (doc. 13-4, Doe decl. ¶ 12; doc. 13-7, DHO report). The petitioner was released from disciplinary segregation on June 5, 2012 (doc. 13-4, Doe decl. ¶ 18).

The petitioner appealed this decision through the administrative remedy process to the Regional Office, where it was remanded back to the institution for a rehearing on September 17, 2012 (doc. 13-4, Doe decl. ¶ 13; doc. 13-8, regional admin. remedy appeal; doc. 13-9, resp. to regional admin. remedy appeal).

The petitioner was placed in administrative detention on September 17, 2012, "pending investigation of a violation of Bureau regulations" (doc. 1-1 at p. 8, admin. det. order). The petitioner states that he was not told the reason why he was placed in administrative detention, and he was not provided with a notice of the rehearing (doc. 16-1, pet. decl.). Hearings are held in the Special Housing Unit ("SHU") at FCI Williamsburg, and the DHO Doe states in his declaration that the petitioner was placed in administrative detention on September 17, 2012, not as a means of retaliation but so the rehearing could be conducted (doc. 13-4, Doe decl. ¶¶ 17-18).

On September 20, 2012, DHO Doe conducted a rehearing via videoconferencing.[1] According to the declaration of DHO Doe, the petitioner was again advised of his rights, he was told why the incident report was remanded for a rehearing, he indicated he was ready to proceed with the rehearing, and he denied the charges. The petitioner elected not to call a witness or have a staff representative, although the witness testimony from the original DHO hearing was considered. The DHO further states that the

---

[1] The DHO was at FCI Estill, and the petitioner was at FCI Williamsburg (doc. 13-4, Doe decl. ¶ 14).

petitioner did not ask if he could call a new witness or present a statement from another inmate (doc. 13-4, Doe decl. ¶ 14; doc. 13-10, DHO report).

The petitioner claims that he was not advised of his right to have staff representation, to present additional witnesses, or to present evidence during the rehearing. He further states that if he had been so advised he would have requested Inmate Nicholas Thomas as a witness (doc. 16-1, pet. decl.). The petitioner submitted the declaration of Inmate Thomas, who stated in his declaration that, on the date of the incident in question, he made the following statements that were attributed to the petitioner: "That motherfucker be piss testing me to every month," and "he [SIS Technician Reid] must be gay or something" (doc. 16-1, Thomas decl.).

The DHO again found that the petitioner committed the prohibited act of Insolence Toward a Staff Member, but he expunged the charge for Refusing to Provide a Urine Sample. The DHO imposed the following sanctions: 30 days of disciplinary segregation, disallowance of 13 days of good conduct time, and six months of loss of phone suspended pending 180 days. The DHO prepared a written report on December 15, 2012, detailing his decision, the evidence he relied upon, and the reasons for the sanctions he imposed. A copy of this written decision was delivered to the petitioner on December 19, 2012 (doc. 13-4, Doe decl. ¶ 15; doc. 13-10, DHO report). According to the DHO, because the petitioner had already served his time in disciplinary segregation on the charge of Insolence Toward a Staff Member after the first DHO hearing, he was released from segregation a few days after the rehearing (doc. 13-4, Doe decl. ¶ 18).

The petitioner appealed this decision through the administrative remedy process, where the disciplinary action and sanctions were upheld by the Regional Office (doc. 1-1, admin. remedy appeal docs. at pp. 5-7, 13). The petitioner's appeal was still pending with the Central Office at the time of the filing of the respondent's first dispositive motion in this case (doc. 13-4, Doe decl. ¶ 16).

By order entered April 17, 2014 (doc. 23), the Honorable Richard M. Gergel, United States District Judge, adopted the undersigned's recommendation that the respondent's previous motion for summary judgment be denied as to the due process claim regarding the petitioner's rehearing on the charge of Insolence Toward a Staff Member and be granted as to the remaining claims. After the court's ruling on April 17, 2014, in order to cure any due process issues, legal counsel advised the Southeast Regional Discipline Hearing Administrator to remand the incident report in question back to the institution for a rehearing (doc. 32-1, Esther Slater decl. ¶¶ 12-13).

On April 28, 2014, the petitioner was given written notice of a rehearing before the DHO and was advised of his rights at the DHO hearing (*id.* ¶ 14; doc. 32-2, notice of hearing before DHO; doc. 32-3, inmate rights at discipline hearing). The petitioner signed both the notice form and rights form indicating he understood he had a right to have a staff representative and to call witnesses (doc. 32-2, notice of hearing before DHO; doc. 32-3, inmate rights at discipline hearing). The petitioner requested that the camera footage from the day of the incident (March 21, 2012) be reviewed to see if the writer of the incident report could see the petitioner in the unit or hear him say what is set out in the incident report (doc. 32-2, notice of hearing before DHO). The petitioner also requested to call three inmate witnesses (*id.*). Two of the inmate witnesses were at different institutions, and thus they were allowed to submit written statements as evidence for consideration by the DHO at the time of the rehearing (doc. 32-1, Slater decl. ¶ 14 ). The other inmate witness was at the same institution as the petitioner and would be called to testify at the rehearing (*id.*).

On Monday, May 19, 2014, a rehearing before DHO Esther Slater was conducted via telephone conferencing. At that time, the DHO explained to the petitioner why the incident report was being remanded for a rehearing. She also explained that the rehearing would only address the Code 312 violation, since the Code 110 violation had already been expunged. The petitioner was present and again advised of his rights. The

petitioner elected to have a staff representative, who was present at the hearing (doc. 32-1, Slater decl. ¶¶ 15-19; doc. 32-4, DHO report).

At the DHO hearing, the petitioner called one witness, Inmate Hill, who stated that "the officer came in and told them to get ready for a U/A, and another inmate said he always does the testing faggot motherfucker. He turned around and said it was Garcon" (doc. 32-1, Slater decl. ¶ 20; doc. 32-4, DHO report; *see* doc. 32-5, Wilbur Hill aff.). According to the DHO, the statements of the other two witnesses for the petitioner were read aloud at the rehearing. Inmate Thomas' statement from May 7, 2014, said he did not remember anything (doc. 32-1, Slater decl. ¶¶ 21-22; doc. 32-4, DHO report). The DHO also considered an earlier statement from Inmate Thomas, which is dated April 3, 2012, in which Inmate Thomas stated that he was the inmate who made the statements attributed to the petitioner and which gave rise to the charge at issue (doc. 32-6, Thomas decl.; doc. 32-4, DHO report §§ III, V). Inmate Garrison's written statement was that, to his recollection, the officer was calling for the petitioner, and other inmates were calling out the officer's name because this officer is known for urine testing. He stated that he supposed the inmates did not welcome the officer's visit. Garrison stated that he went to inform the petitioner that the officer was looking for him. Garrison stated that the location of the petitioner's cell made it difficult for him to hear or see the officer. Garrison stated that before the petitioner arrived the officer had already left (doc. 32-1, Slater decl. ¶ 23; doc. 32-4, DHO report; doc. 32-7, Sean Garrison stmt.).

The DHO also asked the petitioner about the charge, and the petitioner stated that the reporting officer could not see who made the statement, and the officer just assumed it was the petitioner. He stated he lined up at the door for the test. The petitioner could not remember if this was the officer who always did the urine tests. The petitioner stated that he had been tested twice before, and he never refused or failed a test (doc. 32-1, Slater decl. ¶ 24; doc. 32-4, DHO report).

In regard to the petitioner's request to review the video footage of the incident in question, the DHO noted that the first time the petitioner requested to review the video was on April 28, 2014. The DHO explained to the petitioner that this incident was witnessed by a staff member, and, therefore, review of the video was not necessary. Additionally, she explained that since the date of the original incident was March 21, 2012,[2] the video footage no longer existed. The DHO also informed the petitioner that the video had not been preserved as he had not requested it be viewed when he was initially seen by the investigating lieutenant on March 21, 2012. After consideration of all the evidence at the rehearing, the DHO found the petitioner committed the prohibited act of Code 312, Insolence Toward a Staff Member and upheld sanctions of 30 days of disciplinary segregation and disallowance of 13 days of good conduct time. The DHO set out the evidence she relied upon and the reasons for her decision in a written report dated May 20, 2014 (doc. 32-1, Slater decl. ¶¶ 2526; doc. 32-4, DHO report §§ IV, V).

The petitioner submitted an affidavit in opposition to the respondent's motion for summary judgment. The petitioner states that he was denied due process at the most recent rehearing because his staff representative, Lt. Dunbar, failed to represent him and defend his case. Specifically, the petitioner claims the DHO did not consider the affidavit of Inmate Thomas, which was signed on April 3, 2012. He further claims that he was allowed to go to his housing unit to retrieve the affidavits of Inmates Garrison and Thomas after the DHO found him guilty. He claims that Lt. Dunbar faxed the affidavits to the DHO, but the DHO had already found him guilty without considering the evidence during the rehearing (doc. 37-1, pl. aff.).

---

[2] In what appears to be a typographical error, the DHO used the date of March 21, 2014, in the DHO report (*see* doc. 32-4, DHO report § V). However, it is undisputed that the incident in question occurred on March 21, 2012.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S.

9

Constitutional Amendment XIV § 1. Certain procedural safeguards apply when loss of statutory good time credit is at issue. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). These due process protections include advance written notice of the charges, a hearing before an impartial decision maker, the opportunity to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex, and a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. *Id*. at 563–71. Moreover, "revocation of good time does not comport with 'the minimum requirements of procedural due process,' . . . unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id.* at 455-56.

As argued by the respondent, based on the rehearing DHO report dated May 19, 2014, the record reflects that the earlier due process issues from the first rehearing were alleviated since the requirements of *Wolff* were observed at the second rehearing. Prior to the rehearing, the petitioner was given advance written notice of the charges more than 24 hours before the DHO hearing; specifically, at approximately 8:11 p.m. on March 21, 2012, the petitioner received the incident report charging him with violating Code 312 (doc. 32-1, Slater decl. ¶ 9; doc. 32-4, DHO report § I). On April 28, 2014, the petitioner was given written notice of a rehearing before the DHO, and he was advised of his rights at the DHO rehearing (doc. 32-2, notice of hearing before DHO; doc. 32-3, inmate rights at discipline hearing; doc. 32-4, DHO report § I). At the rehearing, the petitioner and his staff representative stated that they were ready to proceed (doc. 32-4, DHO report § V).

Furthermore, the petitioner was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative.

Staff representative Lt. Dunbar was present at the hearing. The petitioner requested to call three inmate witnesses: two of the inmate witnesses were at different institutions, and each witness submitted a statement. The other inmate witness was at the same institution and testified at the rehearing (doc. 32-1, Slater decl. ¶¶ 19-21; doc. 32-4, DHO report §§ II, III).

The record of the rehearing further reflects the decision of the DHO, the evidence she relied upon, the reasons for her decision, and the sanctions she imposed (doc. 32-1, Slater decl. § 27; doc. 32-4, DHO report §§ V-VII). Here, the rehearing comported with the requirements of *Wolff* as the petitioner was given advance written notice of the charge, a hearing before an impartial decision maker, the opportunity to call witnesses and present evidence, an opportunity for non-attorney representation, and a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. *See Wolff*, 418 U.S. at 563-71. Moreover, the finding of the DHO that the petitioner violated Code 312, Insolence Toward a Staff Member, is supported by "some evidence in the record" such that it satisfies "the minimum requirements of procedural due process" as set forth by the Supreme Court in *Hill*, 472 U.S. at 454. Specifically, the DHO noted that she relied on the written statement of the reporting officer (doc. 32-4, DHO report § V). While the petitioner claims (*see* doc. 37-1, pl. aff.) the DHO did not consider the statements of Inmates Garrison and Thomas, the DHO specifically discussed the statements in the report. She noted that Inmate Thomas stated on May 7, 2014, that he could not remember the incident, while he stated on April 3, 2012, that he made the statements attributed to the petitioner that gave rise to the charge at issue. The DHO also noted that Inmate Hill stated in his live testimony at the rehearing that another inmate made the statement at issue, but he did not mention that it was Inmate Thomas who made the statement as he did in his affidavit (doc. 37-4, DHO report § V; *see* doc. 32-5, Hill aff.). The DHO also noted that Inmate Garrison stated in his affidavit that the officer had left before the petitioner got to the door, while the petitioner testified at the rehearing that he was lined up at the door at the time of the

11

incident. Based upon these inconsistencies, the DHO found that the petitioner's witnesses were "less than truthful." The DHO found that the staff gained nothing by fabricating the incident and that the reporting officer's depiction of the incident was more credible (doc. 37-4, DHO report § V). Based upon the foregoing, the undersigned finds that the petitioner's rehearing satisfied the requirements of due process.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the respondent's motion for summary judgment (doc. 33) be granted. Should the district court adopt this recommendation, all pending nondispositive motions will be rendered moot.

s/ Kevin F. McDonald
United States Magistrate Judge

August 20, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).